1

2

3

4

5                 UNITED STATES DISTRICT COURT

6                 EASTERN DISTRICT OF WASHINGTON

7    DIANE ALVAREZ,

8                          Plaintiff,          NO:  13-CV-0150-TOR

9          v.                                  ORDER GRANTING DEFENDANT
                                               TARGET CORPORATION'S
10   TARGET CORPORATION, a                     MOTION TO DISMISS PURSUANT
     Minnesota corporation,                    TO FRCP 12(b)(6) AND GRANTING
11                                             LEAVE TO AMEND COMPLAINT
                           Defendant.
12

13         BEFORE THE COURT is Defendant Target Corporation's Motion to

14   Dismiss Pursuant to FRCP 12(b)(6).  ECF No. 12.  This matter was heard with oral

15   argument on July 8, 2013.  Michael J. Casey appeared on behalf of the Plaintiff.

16   Farron D. Curry and Roman D. Hernandez appeared on behalf of Defendant.  The

17   Court has reviewed the briefing and the record and files herein, had the benefit of

18   oral argument, and is fully informed.

19                          BACKGROUND

20         Plaintiff Diane Alvarez filed a Complaint in Spokane County Superior Court

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO
DISMISS ~ 1

on March 24, 2103.  She alleged claims against Defendant Target Corporation,

including: outrage, blacklisting, violations of the Washington Consumer Protection

Act ("CPA") RCW 19.86.020 and RCW 19.86.030, civil conspiracy, breach of

promise, and negligent infliction of emotional distress.  *See* ECF No. 1.  Defendant

properly removed the action to this Court on April 18, 2013.  Presently before the

Court is Defendant's motion to dismiss all claims pursuant to FRCP 12(b)(6).

## FACTS

The following facts are drawn from Plaintiff's Complaint and attached

exhibits.  *See* ECF No. 1 ("Compl.") at 6-22.  Plaintiff was employed as a cashier

by Defendant for a number of years.  In September and October of 2012,

Defendant conducted an investigation, including video surveillance, which

revealed that on occasion Plaintiff would hit incorrect keys on the cash register,

thereby ringing up merchandise as if purchased with cash, without taking any cash

from the customer or charging the customers' credit cards.  These actions resulted

in approximately $5,000 of merchandise being removed from the store without

payment.

On October 25, 2012, Plaintiff was called into "the Office" and allegedly

told that she had been under investigation since May, that they "already knew what

the answers are," and "we have been watching you for months." Compl. at ¶ 3.3.

Defendant's employees told Plaintiff that she had been hitting incorrect register

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO
DISMISS ~ 2

keys, which resulted in about $5,000 of unpaid merchandise leaving the store.

Plaintiff did not dispute the amount of loss and acknowledged that "she obviously

made some mistakes at the cash register." *Id*. at ¶¶ 3.5- 3.6.  However, Plaintiff

repeatedly denied any accusation of being in a "theft ring" or party to any theft or

fraud.  *Id*. at ¶ 3.6.  According to Plaintiff, she was told she was immediately

"terminated for fraud," but that she "would not be arrested" and she was "not

banned from the store." *Id*. at ¶ 3.7.  On this same day, Plaintiff called the Target

Employee Hotline to file a report.  On October 31, 2012, she received a call from

Gigi Edwards in Defendant's legal department who allegedly told her that the

Defendant employee should not have said she was terminated for fraud; instead,

Ms. Edwards told Plaintiff that she was "terminated for negligent conduct because

of substantial loss since May 2012 and Defendant will not fight unemployment."

*Id*. at ¶ 3.9.

   After her termination, Plaintiff applied to the Washington Employment

Security Department ("ESD") for unemployment benefits.  The reason given by

Plaintiff for termination was that she was "wrongfully accused of fraud after

failing to follow sales and credit card procedures." *Id*. at ¶ 3.12, Ex. B.  On

November 5, 2012, TALX Corporation ("TALX"), an agent of Defendant, sent a

letter to ESD requesting "relief of benefit charges and/or a determination of

[Plaintiff's] eligibility." *Id*. at Ex. A.  The letter stated that Plaintiff "was

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO
DISMISS ~ 3

discharged due to gross misconduct" and "was found to have processed transaction [sic] where customers left the store with merchandise they had not paid for causing a loss of $5,400." *Id*. TALX also attached a copy of company policy that defined "gross misconduct" as including a variety of actions, with the portion labeled "theft" circled.[1] *Id*.

On November 14, 2012 ESD sent TALX an email entitled "Expert Fact Finding" that included eleven follow-up questions requesting additional information regarding the alleged misconduct at the cash register in order to decide Plaintiff's eligibility for unemployment benefits. *Id*. at Ex. B. The email stated that failure to respond would result in "a decision based on the available information." *Id*. It is undisputed that TALX did not respond to the eleven questions posed by ESD in the Expert Fact Finding email. Rather, TALX attached

_____

[1] Defendant's company policy generally defines gross misconduct as: "Misuse of the Employment Relationship or the Company's Property, Credit, or Services. Obtaining or using any property or services of the company, a fellow team member, a guest, a visitor or a vendor in a manner other than that authorized by company policy or by Federal, State or Local Laws." Compl. at Ex. A. The policy then goes on to identify specific conduct that would qualify as gross misconduct including theft, fraud, and many other actions. *Id*.

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 4

a letter identical in content to the letter previously sent to ESD on November 5, 2012. *Id*. at Ex. C.

Despite Defendant's challenge, ESD found that Plaintiff was entitled to unemployment benefits, and she continued to receive benefits until she began attending community college and received financial assistance from an educational grant. *Id*. at ¶ 3.13. On March 4, 2013 Plaintiff alleges she received a letter from Defendant's law firm stating that Defendant had the legal right to sue for civil damages, separate from any criminal penalties which may have been pursued by local law enforcement, and the "amount that our client has authorized us to accept as full, final settlement of all claims against you is $463.09." *Id*. at ¶ 3.14. On March 6, 2013 Defendant allegedly offered to pay $2,000 in exchange for a full release of Plaintiff's claims against Defendant. *Id*. Plaintiff acknowledges that she was an at-will employee and is asserting claims only related to post-termination actions by Defendant and not any claim of wrongful termination. *Id*. at ¶ 3.15.

DISCUSSION

**A. Standard of Review**

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The tenet that a court must accept as true all of the allegations contained in a complaint

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 5

is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Id*. at 678-79. In assessing whether Rule 8(a)(2) is satisfied, the Court first identifies the elements of the asserted claim based on statute or case law. *Id*. at 678. The Ninth Circuit follows the methodological approach set forth in *Iqbal* for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by
> identifying pleadings that, because they are no more than conclusions, are

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 6

1
2
3

> not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

4   *Moss v. U.S. Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) (*quoting Iqbal*, 129

5   S.Ct. at 1950).

6   **B. Outrage/Intentional Infliction of Emotional Distress**

7        To establish the tort of outrage, a plaintiff must show "(1) extreme and

8   outrageous conduct, (2) intentional or reckless infliction of emotional distress, and

9   (3) severe emotional distress on the part of the plaintiff." *Reid v. Pierce County*,

10  136 Wash.2d 195, 202 (1998).   It is not enough that that the defendant acted with

11  tortious or criminal intent, nor will liability extend "to mere insults, indignities,

12  threats, annoyances, petty oppressions, or other trivialities." *Grimsby v. Samson*,

13  85 Wash.2d 52, 59 (1975).  Rather, the conduct must be "so outrageous in

14  character, and so extreme in degree, as to go beyond all possible bounds of

15  decency, and to be regarded as atrocious, and utterly intolerable in a civilized

16  community." *Id*.  The question of whether defendant's conduct was sufficiently

17  outrageous is normally left to the jury. *Dicomes v. State*, 113 Wash.2d 612, 630

18  (1989).  However, "it is initially for the court to determine if reasonable minds

19  could differ on whether the conduct was sufficiently outrageous to result in

20  liability." *Id*.  Factors the court may consider in determining whether the conduct is

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 7

sufficiently outrageous include: the position occupied by defendant; whether the plaintiff was particularly susceptible to emotional distress and if defendant knew that fact; the degree of the severity of the emotional distress as opposed to annoyance, inconvenience or embarrassment; and "the actor must be aware that there is a high probability that his conduct will cause severe emotional distress and he must proceed in a conscious disregard of it."  *Phillips v. Hardwick*, 29 Wash. App. 382, 388 (1981).

In support of her outrage claim, Plaintiff alleges that Defendant violated four criminal statutes and did so "contra to public interest."  ECF No. 13 at 5-6.  The statutes include: (1) RCW 50.36.010 ("it is a crime for employers or agents to knowingly give any false information or withhold any material information during the unemployment process"); (2) RCW 50.36.020 ("it is a crime for any person to willfully attempt in any manner to evade or defeat any contribution");  RCW 50.36.030 ("it is a crime to conceal the true cause of discharge by giving a reason at separation different than a reason later given to the State"); and RCW 49.44.010 (blacklisting).  Plaintiff appears to argue that the alleged commission of these violations, i.e. falsely accusing Plaintiff of theft and fraud in the letters sent to ESD, plausibly states a claim of outrage. [2] Defendant contends that Plaintiff's

_____

[2] Plaintiff argues her case is analogous to *Corey v. Pierce County*, in which a chief deputy prosecutor was falsely and publically accused of criminal behavior (i.e.

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 8

Complaint fails to allege facts sufficient to satisfy the elements of the claim, most particularly, facts establishing that the conduct at issue was extreme and outrageous conduct. The Court agrees. Plaintiff's Complaint alleges that Defendant "falsely stated to ESD that [she] was terminated for being a thief and a fraudster." Compl. at ¶ 4.3. The letter sent by Defendant to the ESD actually states that Plaintiff was "discharged due to gross misconduct," and "was found to have processed transaction [sic] where customers left the store with merchandise they had not paid for causing a loss of $5,400." *Id*. at Ex. A. Defendant also attached a copy of the definition of "gross misconduct" according to its internal company policy, with the word theft circled and no further comment or allegation by Defendant as to the precise reason for Plaintiff's termination.

While Defendant's conduct may certainly be interpreted as insulting to Plaintiff's sensibilities, the Court finds that reasonable minds could not differ as to

mishandling public funds) by her boss in newspaper articles, despite knowledge that an internal investigation revealed little support for that claim. 154 Wash. App. 752, 764 (Ct. App. 2010). In *Corey*, the court found that "[a]s a prosecutor and longtime public servant, such allegations would be particularly loathsome to [plaintiff] and go beyond the 'mere insults and indignities' of *Dicomes*." *Id*. However, the instant case is distinguishable in that Plaintiff is not a public figure, nor is there any evidence that the letter to the ESD was published in any form.

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 9

whether the conduct was sufficiently extreme to be utterly intolerable in a civilized

society.  Plaintiff offers no authority to support the claim that alleged violation of

the identified criminal statutes is automatically sufficient to constitute extreme and

outrageous conduct. *See* ECF No. 13 at 6-7; *But see Grimsby*, 85 Wash.2d at 59

("it is not enough that a 'defendant has acted with an intent which is tortious or

even criminal ….").

Likewise, the Court rejects classifying "when Target threatened to sue

[Plaintiff] while at the same time offering to settle her claims for a pittance," as

extreme and outrageous conduct.  Compl. at ¶ 4.4.

Moreover, based on Plaintiff's factual allegations in her Complaint, none of

the factors identified in *Phillips* support a finding that Defendant's conduct was

sufficiently outrageous.  *Phillips*, 29 Wash. App. at 388.  Plaintiff was no longer an

employee of Defendant, there is no evidence that defendant knew plaintiff was

particularly susceptible to emotional distress, and the severity of the emotional

distress does not appear to rise above embarrassment.  *See id*.  For all of these

reasons, the Court finds Plaintiff fails to plead sufficient facts to support a

plausible claim of outrage.

**C. Blacklisting**

Under RCW 49.44.010, Washington's criminal "blacklisting" statute, it is

unlawful *inter alia* to:

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO
DISMISS ~ 10

1

wilfully and maliciously, send or deliver, **or make or cause to be made, for the purpose of being delivered or sent**, … any paper, letter, or writing,… or publish or cause to be published any statement **for the purpose of preventing any other person from obtaining employment** in this state or elsewhere, … or who shall wilfuly and maliciously make or issue any statement or paper that will tend to influence or prejudice the mind of any employer against the person of such person **seeking employment**….

2

3

4

5

Wash. Rev. Code § 49.44.010 (emphasis added). Washington courts have recently

6

determined that  the blacklisting statute is a sufficient basis for a civil cause of

7

action. *See Moore v. Commercial Aircraft Interiors*, 168 Wash. App. 502, 515

8

(2012).

9

The Court notes that the precise contours of a civil blacklisting claim have

10

not been widely analyzed in case law.  Thus, it is perhaps not surprising that the

11

parties accuse each other of attempting to "stretch" the statute or "add" elements

12

beyond the intent of the legislature.  *See id.* (noting the statute was enacted in 1899

13

to prevent railroad union busting).  Defendant argues that Plaintiff has not alleged

14

facts showing that Defendant or its agent published or circulated her name for the

15

purpose of preventing her from securing employment, nor that it did so in a wilful

16

or malicious manner.[3]  ECF No. 12 at 9.  Plaintiff contends that Defendant has

17

imposed additional burdens, not included in the statute, requiring her to allege that

18

Defendant's statements to the ESD were published or made public.  ECF No. 13 at

19

20

[3] In a complaint, malice and intent may be alleged generally.  F.R.Civ.P. 9(b).

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 11

8-9. Rather, Plaintiff claims it is enough to allege that Defendant acted wilfully or maliciously by simply "making or issuing" "any statement" "that will tend to influence or prejudice the mind of any employer against the person seeking employment." *See* Wash. Rev. Code § 49.44.010. Here, Plaintiff has alleged that the two substantively identical letters sent by Defendant "falsely stated to ESD that [Plaintiff] was terminated for being a thief and a fraudster." Compl. at ¶ 4.4.

The plain language of the statute makes it abundantly clear that Plaintiff must at a minimum allege sufficient facts to show that Defendant "published the grounds for [her dismissal] or otherwise circulated h[er] name to prospective employers *for the purpose of preventing plaintiff from securing employment*." *Cooper v. Univ. of Wash.*, No. C06-1365RSL, 2007 WL 3356809 at *8 (W.D. Wash. Nov. 8, 2007)(emphasis added); Wash. Rev. Code § 49.44.010. Here, the Court discerns no facts in Plaintiff's Complaint indicating that the purpose of Defendant's letters to the ESD was to publish or circulate information to prospective employers in order to prevent her from securing employment.

Even under Plaintiff's theory that she is relying only on the portion of the statute prohibiting "any statement" that would "tend to influence or prejudice the mind of any employer against the person seeking employment," Plaintiff does not allege that she actively sought employment after the letters were sent to ESD, nor that any prospective employer was even hypothetically influenced by the content

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 12

of the letters.  Plaintiff categorically denies seeking employment, yet the statute

only protects "the person seeking employment."  Moreover, while Plaintiff

maintains any statement will suffice under the statute, she ignores that the statute at

bare minimum only prohibits those "who shall willfully and maliciously *make or*

*issue any statement* or paper."  RCW 49.44.010 (emphasis added).  One cannot

make or issue any statement or paper in a void, it must be communicated to a

prospective employer or at least someone who communicates with prospective

employers, otherwise there is no chance "it will tend to influence or prejudice the

mind of any employer."

Thus, the Court finds that Plaintiff fails to plead sufficient facts to support a

plausible blacklisting claim under RCW 49.44.010.

**D. Consumer Protection Act**

"Washington's Consumer Protection Act was enacted to promote free

competition in the marketplace for the ultimate benefit of the consumer."  *Tanner*

*Elec. Co-op v. Puget Sound Power & Light Co.*, 128 Wash.2d 656, 684 (1996).

Plaintiff alleges that Defendant violated the CPA under two separate theories: (1)

unfair and deceptive acts or practices (RCW 19.86.020) and (2) conspiracy to

restrain trade (RCW 19.86.030).  Compl. at 7-8.  The Court will examine each

claim in turn.

///

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO
DISMISS ~ 13

1.   RCW 19.86.020

In order to prevail in a CPA action under RCW 19.86.020, a plaintiff must

establish five elements, including: "(1) unfair or deceptive act or practice; (2)

occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in

his or her business or property; [and] (5) causation." *Hangman Ridge Training*

*Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986).   Defendant

argues that Plaintiff fails to sufficiently allege (1) that Defendant has engaged in

any relevant unfair or deceptive act or practice, (2) that Defendant's alleged

conduct impacts a substantial portion of the public, or (3) that Defendant's alleged

conduct caused Plaintiff any injury to her business or property.  ECF No. 12 at 11-

15.

With regard to the first three elements required to prevail on a CPA claim

under RCW 19.86.020, Defendant cites to Washington and federal cases holding

that an act or practice is actionable under the first two elements of the CPA only if

it has the "*capacity* to deceive a substantial portion of the public." *See e.g.,*

*Hangman Ridge*, 105 Wash.2d at 785.  However, as identified by Plaintiff, in 2013

the Washington Supreme Court held that "a claim under the Washington CPA may

be predicated upon a per se violation of statute, an act or practice that has the

capacity to deceive substantial portions of the public, or an unfair or deceptive act

or practice not regulated by statute but in violation of public interest." *Klem v.*

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO
DISMISS ~ 14

*Washington Mut. Bank*, 176 Wash.2d 771, 787 (2013)(noting that the court did not have the "opportunity to explore in detail how to define unfair acts for the purposes of our CPA."). Further, the court held that "false dating by a notary employee of the trustee in a nonjudicial foreclosure is an unfair or deceptive act or practice and satisfies the first three elements under the Washington CPA," despite acknowledging that the legislature had not yet declared it as a per se unfair or deceptive act for the purposes of the CPA. *Id*. at 793-795 (emphasizing that it is a crime in Washington for a notary to falsely notarize a document).

Plaintiff argues that the criminal statutes relied on for the basis of her allegations are the "same kind" of criminal statutes as *Klem*. According to Plaintiff, Defendant's alleged false statement as to the nature of her termination, evasion of contributions, concealments of mere negligence as the true cause of discharge, and blacklisting, "are crimes AS WELL AS unfair or deceptive acts or practices," and therefore satisfy the first three elements of a Washington CPA claim. ECF No. 13 at 12 (emphasis in original). Defendant perfunctorily responds that neither the facts nor the holding of *Klem* are on point here, and insists that Plaintiff has not pled sufficient facts to support her allegations that Defendant violated any criminal statute. Moreover, Defendant argues that the CPA claim fails as a matter of law because it impacts only the Plaintiff or a limited group, and thus does not have the capacity to deceive a substantial portion of the public.

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 15

1    While the Court acknowledges Plaintiff's cogent argument regarding the

2    plausibility of her claim on the first three elements, it is unnecessary to address the

3    applicability of *Klem* in this case due to the conspicuous lack of sufficient facts to

4    adequately plead the fourth element of her CPA claim: injury to Plaintiff's

5    business or property.  *See Hangman Ridge*, 105 Wash.2d at 780.  The injury need

6    not be great, and the element "will be met if the consumer's property interest or

7    money is diminished because of the unlawful conduct even if the expenses caused

8    by the statutory violation are minimal."  *Mason v. Mortgage America, Inc*., 114

9    Wash.2d 842, 854 (1990)(noting that "injury" is distinguishable from "damages,"

10   thus, monetary damages need not be proven and non-quantifiable injuries may still

11   suffice to prove the fourth element).

12        The Complaint merely recites the fourth element with no additional facts

13   indicating any injury to Plaintiff's business or property.  *See* Compl. at ¶ 6.5.  It is

14   undisputed that despite the letter sent by Defendant to the ESD, Plaintiff

15   successfully received unemployment benefits until she began receiving financial

16   aid while attending community college.  *Id*. at ¶ 3.13.  She does not allege that she

17   sought work or was denied employment opportunities as a result of Defendant's

18   alleged acts.  She does not allege that Defendant relayed information about her

19   termination to anyone other than ESD.  In point of fact, under Washington law

20   information submitted to ESD related to unemployment proceedings "shall be

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 16

private and confidential" except in limited circumstances. [4] *See* Wash. Rev. Code § 50.13.020.  Moreover, Plaintiff explicitly acknowledges that she is not claiming wrongful termination, and her claims are based solely on post-termination actions. Compl. at ¶ 3.15.  The Court declines to rely on *possible* injury to Plaintiff's business or property at some undefined point in the future when she *might* suffer adverse action as a result of the letter to ESD, nor is mere speculation sufficient to properly allege the fourth element of a CPA claim.  For all of these reasons, the Court finds that Plaintiff fails to sufficiently plead the fourth element of a CPA claim under *Iqbal* and *Twombly*.

### 2.  RCW 19.86.030

Under RCW 19.86.030, "[e]very contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is hereby declared unlawful." Wash. Rev. Code § 19.86.030.  This provision is the state equivalent of the federal Sherman Antitrust Act, and the Washington Legislature anticipated its

---

[4] Plaintiff highlights the exceptions to the privacy statute and argues information provided to the ESD is "not absolute locked up privacy so that lies cannot get out of ESD" especially "in today's world where background checks find everything." ECF No. 13 at 4-5.  However, once again, Plaintiff does not allege that information has actually been sought or disseminated, nor that Plaintiff sustained injury as a result of any purported disclosure.

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 17

courts would be guided by federal interpretation of the corresponding federal statute. *See State v. Black*, 100 Wash.2d 793, 799 (1984); *see also* Wash. Rev. Code § 19.86.920. "To state a claim under § 1 of the Sherman Antitrust Act, a plaintiff must show '(1) that there was a contract, combination, or conspiracy; (2) that the agreement unreasonably restrained trade under either a per se rule of illegality or a rule of reason analysis; and (3) that the restraint affected interstate commerce.'" *Bhan v. NME Hosps., Inc*., 929 F.2d 1404, 1410 (9th Cir. 1991). Additionally, a plaintiff must show that she suffered an injury resulting from the allegedly illegal conduct. *See Christofferson Dairy, Inc. v. MMM Sales, Inc*., 849 F.2d 1168, 1172 (9th Cir. 1988).

Plaintiff's Complaint alleges that "[t]he acts and practices of Defendant and TALX complained of herein are a contract, combination, or conspiracy in restraint of trade in violation of RCW 19.86.030." Compl. at ¶ 7.3. Further, Plaintiff alleges that she is "in the business and trade of competing with other individual persons in the State of Washington for the sale of her skills, labor, time, and talent to prospective employees, contractors, vendors or customers." *Id*. at ¶ 7.2. The Court finds these threadbare recitals of the elements of a cause of action under RCW 19.86.030 fail to state a plausible CPA claim under the pleading standards set out in *Iqbal* and *Twombly*.

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 18

First, Plaintiff does not allege, nor can the Court discern, the specific "contract, combination, or conspiracy" that would plausibly give rise to an antitrust claim in this case.  Second, Plaintiff does not allege an unreasonable restraint of trade under either a per se rule of illegality or a rule of reason analysis.  *See Bhan*, 929 F.2d at 1410 (outlining the proper analysis under each of these theories). Instead, the Complaint contains a formulaic recital of this element of a claim under RCW 19.86.030, with no specific facts to support a "restraint of trade" claim.  In order to meet her burden to establish an unreasonable restraint of trade under a rule of reason analysis, plaintiff "must delineate a relevant market and show that the defendant plays enough of a role in that market to impair competition significantly."  *Id*. at 1413.  Plaintiff appears to allege the relevant market is competing with other individuals for the sale of her labor to prospective employers, however, she does not make any allegation as to any significant anti-competitive impairment by Defendant in that market.  *See id*.; *see also* Compl. at ¶ 7.2.

Finally, Plaintiff only offers the conclusory assertion that these alleged acts and practices "caused damage and injury to the business of property of [Plaintiff]." Compl. at ¶ 7.4.  However, the Court is once again unable to identify any injury to Plaintiff's business or property resulting from the alleged illegal conduct under RCW 19.86.030.  Plaintiff has not alleged that she is or was actively seeking employment or competing with any other individual for employment in any form.

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 19

Rather, it appears that Plaintiff is currently pursuing her education.  *Id*. at ¶ 3.13.

Thus, the Court finds that Plaintiff fails to sufficiently plead a cause of action

under RCW 19.86.030.

**E. Civil Conspiracy**

In order to establish a claim of civil conspiracy, a plaintiff must prove by

clear, cogent and convincing evidence, that

> (1) two or more people combined to accomplish an unlawful purpose, or
> combined to accomplish a lawful purpose by unlawful means; **and** (2) the
> conspirators entered into an agreement to accomplish the conspiracy. Mere
> suspicion or commonality of interests is insufficient to prove a conspiracy.
> When the facts and circumstances relied upon to establish a conspiracy are
> as consistent with a lawful or honest purpose as with an unlawful
> undertaking, they are insufficient.

*All Star Gas, Inc., of Washington v. Bechard*, 100 Wash. App. 732, 740 (Ct. App.

2000)(internal citations and quotations omitted)(emphasis added). Defendant

argues that Plaintiff fails to set forth factual allegations to support a civil

conspiracy claim.  Plaintiff's Complaint merely alleges that "the acts of

[Defendant] and TALX complained of herein constitute a combined effort to

accomplish a lawful purpose by unlawful means, or accomplish an unlawful

purpose by lawful means, to the injury of Plaintiff."  Compl. at ¶ 8.2.  Plaintiff

concedes that there is nothing inherently unlawful in Defendant challenging

Plaintiff's unemployment claim.  ECF No. 13 at 15-16.  However, Plaintiff argues

that this lawful purpose was accomplished by unlawful means, namely, false

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO
DISMISS ~ 20

1  statements that Plaintiff was discharged for "being a thief and a fraudster,"

2  concealing negligence as the true cause of her dismissal, and evading

3  contributions.  *Id*. at 16.  Defendant counters that the alleged "statements" made in

4  the letters sent to ESD were not false, and merely explained the circumstances

5  behind Plaintiff's termination in the same manner they were described to her at the

6  time of her termination.  ECF No. 14 at 7-8.

7          The Court recognizes that Plaintiff's Complaint generally includes plausible

8  factual support as to the alleged falsity of the information provided by Defendant

9  to ESD.  However, the Complaint merely sets forth a legal conclusion repeating

10  almost verbatim the elements to prove a civil conspiracy claim, without factual

11  support as to this particular claim.  Most problematic is Plaintiff's failure to allege

12  even a conclusory allegation that Defendant and TALX actively entered into an

13  agreement to accomplish the alleged conspiracy, as required under Washington

14  law.  *See All Star Gas, Inc.*, 100 Wash. App. at 740.  Plaintiff's entire claim

15  appears to be focused on whether Defendant and TALX acted unlawfully, but she

16  neglects to provide any allegations that these two entities combined to accomplish

17  the alleged unlawful activity, much less entered an agreement to do so.  Thus, the

18  Court finds the Complaint fails to state a plausible claim for civil conspiracy.

19  ///

20  ///

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO
DISMISS ~ 21

### F. "Breach of Promise"

In her Complaint, Plaintiff claims that Defendant employee's statement that it would not "fight or contest [Plaintiff's] application for unemployment, and instead twice contesting her application in the manner alleged herein, constitute a breach of that promise [Plaintiff] relied, to her detriment, on the promise and has thus been placed in the present circumstances described herein." Compl. at ¶ 9.2. At oral argument, Plaintiff clarified that this was a promissory estoppel claim. The five elements required to prove a claim of promissory estoppel are: (1) a promise (2) which the promisor should reasonably expect to cause the promisee to change his position (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner (5) that injustice can be avoided only by enforcement of the promise. *See Corbit v. J.I. Case Co*., 70 Wash.2d 522, 538 (1967). The Court finds that Plaintiff fails to allege any facts showing that this statement caused her to change her "position" or that she relied on the alleged promise to her detriment. Once again, Plaintiff received unemployment benefits regardless of any alleged representations made by Defendant that it would not contest her application. Thus, the Court can perceive no "injustice" that would have been avoided if the alleged promise by Defendant was enforced. The Court finds Plaintiff fails to state a plausible claim for promissory estoppel.

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 22

**G. Negligent Infliction of Emotional Distress**

As with any other negligence claim, in order to prevail on a negligent infliction of emotional distress ("NIED") claim, a plaintiff must prove the existence of a duty, breach of that duty, proximate cause, and damage or injury. *See Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wash.2d 233, 243 (2001). Additionally, to establish a negligent infliction of emotional distress claim a plaintiff's emotional response must be reasonable under the circumstances, and must be corroborated by objective symptomatology." *Hegel v. McMahon*, 136 Wash.2d 122, 133 (1998). To satisfy the objective symptomatology requirement, the "emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Id. at* 135 (symptoms must constitute a diagnosable emotional disorder).

Defendant argues that Plaintiff did not plead facts sufficient to establish a breach of duty, nor has she pled facts to support the claim that she suffered damages as a result of Defendant's alleged conduct. The parties acknowledge that generally "there is nothing unlawful or improper in an employer challenging an unemployment claim." *Bayha v. Lampson*, No. 26461-1-III, 2009 WL 2748897at *6 (Wash. Ct. App. Sept. 1, 2009). However, Plaintiff reiterates her argument that in the context of challenging an unemployment claim Defendant had statutory duties to provide truthful information to ESD regarding the cause of her discharge,

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 23

1  not to evade contributions, and not to conceal the true cause of her termination. [5]

2  *See* Compl. at ¶ 10.2.

3          Moreover, in her Complaint, Plaintiff alleges that her distress was

4  "reasonable and justified under the circumstances" and that Defendant's actions

5  caused her weight loss, loss of sleep, headaches, and other physical symptoms. *Id*.

6  at ¶ 4.5. Plaintiff also states she has begun psychological counseling through her

7  church. *Id*. However, the alleged "reasonableness" of her response is not

8  corroborated by any allegation that her emotional distress was susceptible to

9  medical diagnosis. *See Hegel*, 136 Wash.2d at 135. Plaintiff's Complaint does not

10  include any allegation that she has been treated by a medical practitioner for these

11  alleged "symptoms." The Court is further compelled to note that aside from the

12  entirely conclusory allegation that Defendant "proximately caus[ed] damage to

----

13  [5] In her responsive briefing, Plaintiff also argues that Defendant has a "self-

14  imposed duty to not fight unemployment" presumably based on the alleged

15  promise by a Defendant employee analyzed above; and a duty to "not … have its

16  law firm whipsaw [Plaintiff] between the choices of either taking a pittance

17  settlement for these valuable claims or spending to defend [Defendant's] dubious

18  lawsuit." ECF No. 13 at 18-19. However, Plaintiff presents no authority to support

19  the existence of these "duties," and thus the Court declines to consider these

20  arguments.

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO
DISMISS ~ 24

1    [Plaintiff] and negligently inflict[ed] emotional distress upon her," it is unclear

2    from the Complaint precisely which act or acts by Defendant were the proximate

3    cause of her alleged emotional distress. *See Strong v. Terrell*, 147 Wash. App. 376,

4    388 (2008)(in order to establish proximate cause, plaintiff must prove that the

5    negligent conduct caused the injury in a direct sequence, with no intervening

6    independent cause).   For all of these reasons, the Court finds that Plaintiff's

7    Complaint fails to provide the necessary facts to plead a plausible claim of NIED.

8    **H. Leave to Amend**

9         Even when a complaint fails to state a claim for relief, "[d]ismissal without

10   leave to amend is improper unless it is clear that the complaint could not be saved

11   by an amendment."  *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).  The

12   standard for granting leave to amend is generous. See Fed. R. Civ. P. 15(a)(2)

13   ("The court should freely give leave when justice so requires.").  The court

14   considers five factors in assessing the propriety of leave to amend—bad faith,

15   undue delay, prejudice to the opposing party, futility of amendment, and whether

16   the plaintiff has previously amended the complaint.  *United States v. Corinthian*

17   *Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

18        The Court finds no indication of bad faith, undue delay, or prejudice to the

19   opposing party, nor have Plaintiffs previously amended their Complaint.  Thus, the

20   only factor left for the Court to weigh is whether an amendment would be futile.

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO
DISMISS ~ 25

Futility is established only if the complaint "could not be saved by any amendment." *Id*. (internal citations omitted).  At this early stage of the proceeding, the Court can conceive of additional facts that could provide plausible support for Plaintiff's claims.  *See id*.  Consequently, leave to amend the Complaint is granted.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

    1.  Defendant Target Corporation's Motion to Dismiss Pursuant to FRCP 12(b)(6), ECF No. 12, is **GRANTED**.

    2.  Plaintiff is **GRANTED** leave to file an amended complaint within **thirty (30) days** of the entry of this order.

    The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

    **DATED** July 10, 2013.

THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION TO DISMISS ~ 26